***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Holmes, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding, with some modification, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 24 July 2002 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation act.
2. The Protective Insurance Company is the carrier at risk.
3. That an employer/employee relationship existed on the date of alleged accident of November 9, 1998.
4. Plaintiff's average weekly wage is $450.00
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a thirty-eight year old male. The employee-plaintiff attended school until the 10th grade and subsequently received a G.E.D. He continued his education at Alliance Trucking School in Benson, North Carolina, for instruction on driving tractor-trailers.
2. The plaintiff had previously worked for a car wash in Greensboro, North Carolina, where he worked for 4 years after he dropped out of school in the 10th grade. Plaintiff then went into commercial construction for approximately 5 years. Subsequently, the employee-plaintiff worked for the Department of Corrections for approximately 10 years. After that, he began his employment with Coastal Transport. The plaintiff had been employed by Coastal Transport for approximately 3 months before his injury.
3. At the time of injury the plaintiff was employed as an over the road driver of 18-wheel vehicles. In addition to driving the 18-wheelers, the plaintiff was required to secure his loads by covering the load with a tarp for protection.
4. The plaintiff had an average weekly wage of $450.00, yielding a compensation rate of $300.00.
5. On November 9, 1998, the plaintiff was on the job in Kingstree, South Carolina, at a Firestone store, receiving a load to haul. The plaintiff had already rolled out the back tarp on the trailer (one of the two tarps necessary to secure the load) and was in the process of rolling out the front tarp. The plaintiff's leg went down between two of the rolls and got caught, and he fell down. As the plaintiff fell, he spun to the right and felt something burn and sting in his back. At first, plaintiff thought he had pulled a muscle in his back. Later, because the plaintiff had recently had problems with his kidneys, he wasn't certain whether the pain was due to the fall on the job or due to the problems he was having with his kidneys.
6. The plaintiff notified the employer-defendant of his pain and asked that he be re-routed back to North Carolina. The employer-defendant did re-route him back to North Carolina. The pain did not go away, and it became increasingly difficult for the plaintiff to press the clutch or the brake on the trucks he was driving.
7. The plaintiff went to Good Hope Hospital in Erwin, North Carolina for his back pain, and was referred to Dr. Abraham Oudeh in Dunn, North Carolina. Dr. Oudeh referred the plaintiff to Dr. Willie Chu in Dunn, North Carolina.
8. Dr. Willie Chu took the plaintiff out of work from February 16, 1999 through March 2, 1999. Dr. Chu was to perform surgery on the plaintiff for a hernia, but after further careful exam, could not find any evidence of hernia. On February 26, 1999, Dr. Chu referred the plaintiff to Dr. William Oh, in Dunn, North Carolina.
9. Dr. Oh first examined and evaluated the employee-plaintiff on March 2, 1999. An MRI scan was performed at Good Hope Hospital in Erwin, North Carolina, on March 4, 1999. On March 8, 1999, Dr. Oh determined from the MRI that the employee-plaintiff did in fact have a herniated disk, and he ordered the plaintiff out of work for three weeks, and prescribed physical therapy. On March 19, 1999, Dr. Oh ordered the plaintiff out of work for two months. On March 29, 1999, Dr. Oh recommended lumbar laminectomy, which was scheduled for April 6, 1999.
10. The plaintiff notified the employer-defendant of his back injury on March 8, 1999, immediately after Dr. Oh informed him that it was, in fact, a herniated disk.
11. The plaintiff underwent a lumbar laminectomy on April 6, 1999 at Betsy Johnson Hospital in Dunn, North Carolina.
12. The plaintiff returned to Dr. Oh for follow-up visits on several occasions. On April 14, 1999, Dr. Oh ordered the plaintiff out of work until June 10, 1999. On June 11, 1999, Dr. Oh ordered the plaintiff out of work until July 15, 1999.
13. Dr. Barry Katz of Goldsboro Neurological Surgery in Goldsboro, North Carolina first examined the plaintiff on October 4, 2000, approximately six months after his lumbar laminectomy, and then treated the employee-plaintiff on three more occasions. Dr. Katz testified by deposition that it was possible that the plaintiff had mistaken the pain he was experiencing from his back injury with the pain associated with kidney stones.
14. Dr. Katz testified that it was his opinion that the plaintiff had a permanent partial disability rating of 10% to his back.
15. The plaintiff was hired by Winn-Dixie warehouse in Clayton, North Carolina, and returned to work on July 1, 1999. The plaintiff continues to experience some back pain. Part of his continuing back pain is due to scar tissue associated with his surgery of April 6, 1999.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff sustained a back injury by accident arising out of and in the course of his employment on November 9, 1998. This injury caused plaintiff to suffer a herniated disc and necessitated that plaintiff undergo a lumbar laminectomy. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation at the rate of $300.00 per week from February 16, 1999 through July 1, 1999. N.C. Gen. Stat. § 97-29.
3. The plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure of lessen the period of disability. N.C. Gen. Stat. § 97-25.
4. As a result of the compensable injury, the plaintiff has a permanent partial disability rating of 10% to his back. N.C. Gen. Stat. § 97-31. Plaintiff, under the circumstances, gave timely notice of his back injury to the defendant. N.C. Gen. Stat. § 97-22.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendant shall pay temporary total disability compensation to the plaintiff at the rate of $300.00 per week from February 16, 1999 through July 1, 1999. This compensation has accrued and shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee herein approved, the defendant shall pay permanent partial disability compensation to the employee-plaintiff at a rate of $300.00 for 30 weeks for his 10% permanent partial disability to his back. This compensation has accrued and shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to employee-plaintiff in paragraphs 1 and 2 above is hereby approved to be deducted from sums due the employee-plaintiff and paid directly to counsel.
4. Defendant shall pay medical expenses incurred or to be incurred for as long as such treatment is reasonably required to effect a cure, give relief or lessen plaintiff's period of disability. Defendant shall pay the costs, including an expert witness fee to Dr. Barry Katz in the amount of $350.00.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER